STEWART, J.
 

 hThe defendant, Wyatt Morgan, was convicted of three counts of aggravated rape. He was sentenced to three consecutive life sentences without benefit of parole, probation or suspension of sentence. The defendant now appeals. For the reasons discussed below, the defendant’s convictions and sentences are affirmed.
 

 FACTS
 

 The following facts were adduced at the defendant’s trial that commenced on June 2, 2009.
 

 COUNT 1-J.C.
 

 At the time of trial, J.C. was 82 years old and the only surviving victim. In the early morning hours of May 28, 1995, an intruder attacked her in her bedroom.
 
 *1131
 
 She woke to see a figure approaching her bed. He was holding a towel.
 

 J.C. testified that she attempted to get away, but he caught her and began to strangle her. She fought back with her feet and legs in an attempt to get the intruder off of her. The intruder ripped off her nightgown and eventually pinned her down. Throughout the attack, the intruder did not speak and J.C. never observed his physical features.
 

 J.C. contacted the police, who immediately responded. As a result of the attack, J.C. sustained bruises on her face and throat and injuries to her arm and back. She testified that she also suffered a back injury that took her a while to recover from.
 

 |2She was brought to Franklin Medical Center where she submitted to a sexual assault exam. This sexual assault kit was analyzed at the North Louisiana Crime Lab where spermatozoa were found to be present.
 

 Deputy Tim Pylant, of the Franklin Parish Sheriffs Office, investigated the incident. A bed sheet and a towel were taken from the bedroom and placed into evidence. Deputy Pylant testified that J.C. appeared nervous, upset and scared, but that he did not recall any visible injuries on her body.
 

 Shana Sutherlin, a registered nurse who was employed at Franklin Medical Center, assisted with the sexual assault exam of J.C. on May 28, 1995. Ms. Sutherlin testified that she observed J.C.’s face and neck were very red indicating trauma and that her left elbow was injured.
 

 Mary Dukes, the quality manager and forensic DNA analyst at the North Louisiana Crime Lab, qualified as an expert in the field of forensic DNA testing. Analysis of the sex assault kit revealed the presence of spermatozoa. Regarding the evidence collected from J.C., Ms. Dukes testified the following:
 

 The DNA profile obtained from the sperm fraction of the vaginal swab ... was consistent with being a mixture of DNA from at least two individuals, J.C. and Wyatt Morgan cannot be excluded as donors of the DNA in this mixture. The DNA profile obtained and from the sperm fraction of the vaginal swab was 5.45 trillion times more likely to be a mixture of DNA from J.C. and Wyatt Morgan than a mixture of DNA from J.C. and an unknown unrelated individual.
 

 COUNT
 
 MA
 

 At approximately 1:20 a.m. on September 24, 2000, A.A., an 89-year-old female, called the Franklin Parish Sheriffs Office to report that she was Draped. At Franklin Medical Center, she submitted to a sexual assault exam. Although A.A. was deceased at the time of trial, the results of her sexual assault exam were admitted into evidence. Analysis of the sexual assault kit revealed the presence of spermatozoa.
 

 Deputy Pylant also investigated the alleged rape of A.A. He spoke with A.A. at the hospital, and he testified that she appeared confused.
 

 Debi Elrod, a registered nurse employed at Franklin Medical Center, assisted in the treatment and examination of A.A.
 
 [1]
 
 Elrod was qualified to provide her expert opinion as a registered nurse. She testified that, in her professional opinion, the injuries A.A. sustained were consistent with a sex
 
 *1132
 
 ual assault. Although a physician performed certain components of the physical exam, Elrod was present during the collection of the evidence, and thus was able to testify accordingly. In addition to the sexual assault kit, the nightgown A.A. was wearing during the assault was collected and properly placed into an evidence envelope then transferred to the police.
 

 The state offered into evidence the medical records of A.A., which included the documentation of her arrival into the emergency room and her subsequent admittance into the hospital. The medical documentation indicated that there was vaginal penetration. The report also provided that ejaculation occurred.
 

 Virginia Eldridge, a nurse employed at Franklin Medical Center, also assisted in the sexual assault exam of A.A. Eldridge was qualified as an expert RN and allowed to give her opinion based on her training and 14experience. Accordingly, Eldridge testified that she believed the injuries sustained by A.A. were caused by rape, i.e., actual penetration. Eldridge corroborated the testimony of Elrod and provided that all the proper procedures were followed.
 

 Patrick Lane, an employee with the Louisiana State Police Crime Lab Physical Evidence Unit, qualified as an expert in the field of crime scene investigation. Lane responded to A.A.’s residence after the scene had been secured by the local police. He testified that the crime revealed in retrospect that “someone came there with a specific purpose and once they accomplished what that purpose was, they left.”
 

 Among the evidence collected from A.A.’s bedroom were the following items: a top sheet from her bed, the fitted sheet, two pillow cases, a reference blood sample, and a Band-Aid. Lane provided that the evidence was properly collected according to protocol and securely stored for further testing.
 

 Julia Naylor, an employee at the Louisiana State Police Crime Lab, was qualified as an expert in the field of forensic serology.
 
 [2]
 
 Naylor received and analyzed the evidence collected by Lane, the nightgown worn by A.A. at the time of the assault, and the results of A.A.’s sexual assault kit. Naylor testified as to her findings:
 

 Spermatozoa were detected on the vaginal smear and the vaginal washing smear from A.A.’s sexual assault kit. Semen was detected on the vaginal swab, the night gown and in the vaginal washings from A.A.’s sexual assault kit. Human blood was detected on the night gown from the victim’s sexual Rassault kit and on the band-aid. Blood was detected on the vaginal swab and in the vaginal washings from the victim’s sexual assault kit.
 

 COUNT 3-R.H.
 

 On the morning of September 7, 2003, R.H., an 89-year-old female, telephoned her friend, Ms. Alice Carson, and told her that an intruder had entered her home that night and raped her. Ms. Carson came to the aid of R.H. and took her to Franklin Medical Center where she submitted to a sexual assault examination. Although R.H. was deceased at the time of trial, her statements to Ms. Carson and the results of her sexual assault exam were admitted into evidence. Analyzing the sexual assault kit revealed the presence of spermatozoa.
 

 Deputy Pylant also investigated the alleged rape of R.H. He observed that there was no sign of forced entry at R.H.’s residence. Everything appeared to be in its place except for in the bedroom area. He
 
 *1133
 
 testified that R.H. seemed upset and that he observed a bruise on her right forearm.
 

 Alice Carson, a friend of R.H. for over 40 years who personally cared for her, testified that she received a phone call from R.H. who said, “Alice come help me, I think I’ve been raped.” Ms. Carson and her husband immediately went to R.H.’s residence.
 

 Ms. Carson testified that she observed scuff marks on R.H.’s elbow, a red mark on her back, and redness on her neck. She described R.H.’s demeanor as agitated, real nervous and shaky. According to Ms. Carson, R.H. waited before calling for fear that the intruder was still in her home. R.H. told Ms. Carson that the assailant woke her up and put his hand on her | ¡¡leg, at which point she began kicking to fight him off. He pulled R.H. onto the floor and that was how she got her bruises. Ms. Carson testified that the intruder choked R.H. until she was unconscious. Ms. Carson took R.H. to Franklin Medical Center to be examined.
 

 Dr. Jorge Tapia, the attending emergency room physician at Franklin Medical Center, testified that R.H. reported to the emergency room for a sexual assault exam. Dr. Tapia observed the following injuries sustained by R.H.: semicircular lesions on the right forearm, a small lesion on the left inner thigh, significant edema, swelling, on the external aspect of the patient’s genitalia, and a superficial laceration in the vaginal vault. He testified that his exam revealed that the patient had recently engaged in sexual intercourse, intercourse which was not consensual.
 

 The state moved to introduce R.H.’s medical records into evidence. The judge conducted an in camera inspection of the records and only allowed information obtained from medical treatment to be presented to the jury.
 

 Regarding the evidence collected from R.H., Ms. Dukes provided the following:
 

 The DNA profile obtained from the sperm fraction of the vaginal swab was consistent with being a mixture of DNA from at least two individuals, R.H. and Wyatt Morgan cannot be excluded as donors of the DNA in this mixture. The DNA profile obtained from the sperm fraction of the vaginal swab was 8.47 trillion times more likely to be a mixture of DNA from R.H. and Wyatt Morgan than a mixture of DNA from R.H. and an unknown unrelated individual.
 

 The DNA profile obtained from the sperm fraction of the vaginal pool was consistent with the DNA profile obtained from the reference sample of Wyatt Morgan. The probability |7of finding the same DNA profile if the DNA had come from a randomly selected individual other than Wyatt Morgan was approximately one in 1.67 trillion.
 

 The DNA profile obtained from the sperm fraction of the vaginal washings was consistent with the DNA profile obtained from the reference sample of Wyatt Morgan. The probability of finding the same DNA profile if the DNA had come from a randomly selected individual other than Wyatt Morgan was approximately one in 9.87 quadrillion.
 

 It was not until 2003 that the North Louisiana Crime Lab was able to connect these three rapes to one suspect. Nonetheless, the cases went unsolved for years until April 4, 2007, when Mary Dukes alerted the police that they had a CODIS
 
 [3]
 
 
 *1134
 
 match of the DNA evidence submitted. This match was to Wyatt Morgan, the defendant in the instant case.
 

 The defendant was arrested in 2007. He denied any involvement in the rapes and voluntarily consented to giving a DNA sample. Analysis of the sample matched the defendant as the one individual responsible for committing the rapes against J.C., A.A., and R.H. On May 31, 2007, the defendant was indicted for three counts in the aggravated rapes of J.C., A.A., and R.H.
 

 On June 5, 2009, the jury returned guilty as charged verdicts on all three counts. The trial court denied the defendant’s motions for new trial and for post-verdict judgment of acquittal. On July 7, 2009, the defendant | ¿received three life sentences, to run consecutively, all without benefit of probation, parole or suspension or sentence. This appeal followed.
 

 LAW AND DISCUSSION
 

 Sufficiency of the Evidence
 

 In the defendant’s first assignment of error, he argues that there is insufficient evidence to prove his guilt for the offenses of aggravated rape beyond a reasonable doubt. He particularly argues that the state has failed to prove the elements of the offenses beyond a reasonable doubt, and that penetration, a requisite element of the crime of rape, occurred in any of the three instances.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Murray,
 
 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to | 3accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 La. R.S. 14:41 provides in pertinent part:
 

 Rape is the act of anal, oral or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete this crime.
 

 La. R.S. 14:42 provides in pertinent part that “aggravated rape is a rape committed upon a person sixty-five years of age or older.”
 

 Under La. R.S. 14:41 and 14:42, the state had to prove that each victim was 65
 
 *1135
 
 years of age or older and that the defendant committed an act of sexual intercourse without her consent. “Violation of La. R.S. 14:41 occurs when there is any penetration, however slight, of the aperture of the female genitalia, even its external features.”
 
 State v. Bertrand,
 
 461 So.2d 1159 (La.App. 3d Cir.1984),
 
 writ denied,
 
 464 So.2d 314 (La.1985).
 

 A review of the evidence presented at trial, viewed under the
 
 Jackson
 
 standard, is sufficient to support all of the elements of the three convictions as set forth herein.
 

 The first victim, J.C., who was the only victim alive and able to testify at trial, testified that in the early morning hours of May 28, 1995, she was attacked in her bedroom and raped. J.C. was born on January 17, 1927, making her 68 years of age at the time of the rape.
 

 The testimony of the treating nurse, Shana Sutherlin, provided that a sexual assault kit was performed on J.C. whereupon the vaginal vault was | inswabbed and those swabs were submitted for testing. J.C.’s face and neck were very red and her left elbow was injured indicating trauma.
 

 The DNA of the defendant was matched to the samples taken from J.C.’s vaginal vault. The presence of the defendant’s DNA in this location of the vaginal vault establishes that penetration occurred. Mary Dukes, a forensic analyst with the North Louisiana Crime Lab, testified that the DNA profile obtained from the sperm fraction of the vaginal swab was 5.45 trillion times more than likely to be a mixture of DNA from J.C. and Wyatt Morgan than a mixture of DNA from J.C. and an unknown unrelated individual.
 

 The second victim, A.A., was deceased at the time of trial and thus unable to testify. However, A.A.’s certificate of death listed her D.O.B. as February 26, 1911. The rape occurred on September 24, 2000, which means A.A. was 89 years of age at the time of the rape.
 

 Because A.A. was not available to testify at trial, her initial statements made to the doctors and nurses when she was originally treated, and those statements made to the first responding officers were admitted into evidence over the objection of the defendant. Additionally, Ms. Elrod, who is a registered nurse who assisted in the examination and treatment of A.A., testified that the injuries that A.A. sustained were consistent with a sexual assault. Ms. Eldridge, who also assisted in the sexual assault examination of A.A., also testified that she believed the injuries sustained by A.A. were caused by rape.
 

 | n During the exam, a sexual assault kit was performed. Additionally, A.A.’s nightgown was submitted for testing. A.A.’s hospital paperwork indicated that both penetration and ejaculation occurred.
 

 Julia Naylor, a forensic serologist at the Louisiana State Police Crime Lab, testified that her testing and analysis revealed the presence of spermatozoa on the following evidence collected from A.A.: vaginal smear, vaginal washings, vaginal swabs, and the nightgown. This evidence established that spermatozoa was present in the innermost aspect of the vagina, the vaginal vault. The DNA of the defendant was matched to the cuttings taken from A.A.’s night gown.
 

 The third victim, R.H., was also deceased at the time of trial. However, Deputy Pylant, in his investigation, obtained R.H.’s date of birth, which is July 17,1914. The rape occurred on September 7, 2003, making R.H. 89 years old at the time of the rape.
 

 As stated in the facts section above, Dr. Tapia’s expert opinion as a medical doctor, determined that there was forcible penetration.
 

 
 *1136
 
 The DNA of the defendant was matched to the samples taken from R.H.’s vaginal vault.
 

 The state clearly established that the three victims were over the age of 65 on the night of the sexual assaults. J.C. stated in her own testimony that sexual acts were perpetrated upon her without her consent. The spermatozoa sample taken from the vaginal vault established that the likelihood of the attacker being anyone other than the defendant was 5.45 | ^trillion to one. There was sufficient evidence to convict the defendant of the aggravated rape of J.C.
 

 The treating nurse’s testimony provided that A.A. sustained actual penetration, suffered injuries as a result, and that ejaculation occurred. The defendant’s DNA matched the spermatozoa found on the nightgown A.A. was wearing the night of the attack. Spermatozoa was detected on the vaginal swabs taken from the vaginal vault. There was enough evidence to convict the defendant of the aggravated rape of A. A.
 

 R.H.’s physical exam at the hospital revealed that she sustained injuries to the vaginal vault and labia minora, which the physician testified was consistent with forcible penetration. The defendant’s DNA matched the samples taken from the vaginal vault on the vaginal washings, the vaginal pool and the vaginal swabs. There was sufficient evidence to convict the defendant of the aggravated rape of R.H.
 

 Considering the testimony and evidence presented, we find that the state proved each element of aggravated rape and that the defendant was the perpetrator of each count of aggravated rape. This assignment is therefore without merit.
 

 Motion to Suppress
 

 The defendant asserts in his second assignment of error that the trial court erred in denying his motion to suppress the DNA evidence. More specifically, he alleges that the search warrant was not issued with the requisite “oath or affirmation” from the affiant and thus was invalid.
 

 | isThe Louisiana Supreme Court, in
 
 State v. Lee,
 
 05-2098 (La.1/16/08), 976 So.2d 109, summarized the constitutional limitations on the collection of DNA samples as follows: “[I]t is undisputed that the collection of a saliva sample for DNA analysis is a search [requiring a warrant] implicating the Fourth Amendment.”
 
 Kohler v. Englade,
 
 470 F.3d 1104, 1109 (5th Cir.2006);
 
 see also, Padgett v. Donald,
 
 401 F.3d 1273, 1277 (11th Cir.2005).
 

 At the hearing on the motion to suppress, Franklin Parish Deputy Mike Gilmore testified that he and Deputy Pylant met with the defendant on April 5, 2007, and received voluntary consent to collect a DNA sample.
 

 The record contains a copy of the consent form signed by the defendant on April 5, 2007, at 1:48 p.m. By affixing his signature, the defendant certifies that he voluntarily consents to provide a sample of blood or saliva for use in an ongoing criminal investigation. The defendant certifies that he understands he has the right to refuse and that no threats, duress, or promises were made to induce him to providing the samples. Further, the defendant certifies that he has read the form in its entirety, understands its contents and does not wish to consult a lawyer.
 

 The defendant takes issue with the fact that a court order existed, signed by Judge Roberts, granting law enforcement the right to obtain a sample of the defendant’s DNA in the event he refused. The defendant alleges that this order was invalid because it did not include the requisite oath or affirmation as required by the U.S. and Louisiana Constitutions.
 

 
 *1137
 
 The court order at issue was never mentioned to the defendant at any time. Deputy Gilmore testified that at no time was the order ever brought toJ~the defendant's attention. Deputy Pylant had it in his possession in the event that the defendant did not voluntarily consent, which is a scenario that never came to fruition.
 

 The trial court accepted the uncontro-verted testimony of Deputy Gilmore and found that the order was never mentioned and that consent was voluntary. In his brief, the defendant does not allege that the order was used in order to coerce the defendant into consent. Rather, the defendant alleges that the mere existence of the order vitiates any consent.
 

 In
 
 State v. Ossey,
 
 446 So.2d 280 (La.1984), the Louisiana Supreme Court explained consent as a valid exception to the warrant requirement:
 

 One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances surrounding each case. The factual determinations of the trial judge are entitled to great weight on appellate review.
 
 State v. Edwards,
 
 434 So.2d 395 (La.1983);
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Bourgeois,
 
 388 So.2d 359 (La.1980).
 

 The defendant voluntarily consented to submit a DNA sample. In addition to the undisputed testimony of Deputy Gilmore, the defendant signed the consent form. The trial court did not err in finding that the defendant voluntarily consented. Therefore, the taking of the sample was permissible. Thus, the trial court did not err in denying the motion to suppress the DNA evidence.
 

 This assignment is therefore without merit.
 

 Other Crimes Evidence
 

 In his third assignment of error the defendant argues that the trial court erred in allowing other crimes evidence to be admitted, specifically evidence of his prior convictions, in violation of La. C.E. art. 404(B). The defendant alleges that the prior convictions, for the offenses of peeping tom and trespassing, were in no way similar to the instant offense. The defendant argues that the prior convictions’ probative value did not outweigh the prejudicial effect.
 

 Generally, evidence pertaining to the defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove the defendant’s character, and thus his subsequent disposition to break the law. La. C.E. art. 404;
 
 State v. Sumlin,
 
 44,806 (La.App. 2 Cir. 10/28/09), 25 So.3d 931;
 
 State v. Humphrey,
 
 412 So.2d 507 (La.7/2/1981). The underlying rationale is that the prejudicial tendency of such evidence, in that the finder of fact is likely to convict because the defendant is a “bad person” regardless of the strength of evidence against him in the case being tried, outweighs the probative value of the evidence.
 
 State v. Sumlin, supra; State v. Gay,
 
 616 So.2d 1290 (La.App. 2d Cir.1993).
 

 Some exceptions to this general rule are listed in La. C.E. art. 404, which provides in pertinent part:
 

 [Ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, op
 
 *1138
 
 portunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the h (¡prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 There are other jurisprudential factors to consider to determine whether evidence of other acts may be admitted. First, one of the exceptions listed in Article 404(B) must have some independent relevance, or be an element of the crime charged; in addition, such factors must be a genuinely contested issue at trial.
 
 State v. Welch,
 
 615 So.2d 300 (La.1993);
 
 State v. Jackson,
 
 625 So.2d 146, 149 (La.1993). Second, the state must make a showing of fact which would support a jury finding that the defendant committed the prior act by a preponderance of the evidence. La. C.E. art. 1104;
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988);
 
 State v. Langley,
 
 1995-2029 (La.App. 4th Cir.9/4/1996), 680 So.2d 717;
 
 State v. Crawford,
 
 95-1352 (La.App. 3d Cir.4/3/1996), 672 So.2d 197. Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), must be met.
 

 In order to comply with due process, the state is required to give pretrial notice of its intent to use evidence of other crimes.
 
 State v. Prieur, supra.
 
 Under
 
 Prieur,
 
 in order to comply with due process the state is required to: (1) give pretrial notice of its intent to use evidence of other 117crimes; and (2) prior to admission of the evidence, show that the evidence is not repetitive or cumulative, serves the purpose for which it is offered, and is not pretext for portrayal of the defendant as a person of bad character.
 

 Additionally,
 
 Prieur
 
 requires that, upon request of the defendant, the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.
 
 Id.
 

 The erroneous admission of other crimes evidence is subject to harmless error analysis.
 
 State v. Maise,
 
 00-1158 (La.2002), 805 So.2d 1141, 1148. The test for determining harmless error is whether the reviewing court may conclude the error was harmless beyond a reasonable doubt, “i.e., was the guilty verdict actually rendered unattributable to the error.”
 
 State v. Casey,
 
 1999-0023 (La.1/26/00), 775 So.2d 1022, 1033. A trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion.
 
 State v. Butler,
 
 30,798 (La.App.2d Cir.6/24/98), 714 So.2d 877,
 
 writ denied,
 
 98-2217 (La.1/8/99), 734 So.2d 1222.
 

 In this case, the state filed a pretrial motion to allow the admission of La. C.E. art. 404(B) other crimes evidence during defendant’s trial. The state provided the defendant with notice of its intent to introduce evidence that Wyatt Morgan was the same person convicted of the offenses of peeping tom and trespassing in Franklin Parish.
 

 
 *1139
 
 |1xThe state sought to introduce the pri- or convictions of the defendant and the testimony of the arresting officer for the offense. On the night of July 29, 2001, Deputy John McCarthy, while on patrol, observed a silver bicycle partially hidden under shrubbery near a residence. Deputy McCarthy exited his vehicle to inspect the bicycle and as he did so, he also approached the residence. He was able to clearly observe the elderly female resident reading in a well-lit room. As Deputy McCarthy approached a nearby tree, the defendant bolted from behind the tree.
 

 The defendant was shortly thereafter apprehended and arrested. Deputy McCarthy returned to the tree that the defendant bolted from and recovered a dark colored cap and a terry cloth towel. From the defendant’s location by the tree, one could see clearly into the house, and specifically, could clearly see the resident. Following his arrest, the defendant was charged with simple criminal trespass and peeping tom. The defendant pled guilty to the charges.
 

 A consideration of the jurisprudential factors establishes that the other crimes evidence was properly admitted. First, the
 
 modus operandi
 
 is so similar that one can easily conclude the same person was the perpetrator in all four instances. The victims in all four cases were elderly women, alone in their houses at night. The rape of A.A. occurred in the same neighborhood as the previous peeping tom and trespass case. All three victims’ faces were covered either by a towel or pillow in order to prevent them from identifying the defendant.
 

 | U)The peeping tom and trespassing conviction is relevant to prove material facts in the instant case. It showed his identity, his method of selection of his victims, how he assured they were alone, and his preparation for commission of these crimes.
 

 Second, the state proved by a preponderance of the evidence that the defendant committed the prior act. Not only did the state present the officer who caught the defendant and arrested him, but the defendant pled guilty to the charges. Additionally, the defendant does not contest the prior conviction.
 

 Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. In State v.
 
 Humphrey, supra,
 
 the Louisiana Supreme Court stated that the underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. Here, the other crimes evidence is not marginally relevant but instead provides proof that the
 
 modus operandi
 
 in all four instances is so similar that it is more likely than not the work of one individual.
 

 Finally, the requirements set forth in
 
 State v. Prieur, supra,
 
 were met. In order to comply with due process, the state gave pretrial notice of its intent to use evidence of other crimes. Its reason for introducing this evidence was because identity of the perpetrator is a key issue in this case. |2oNone of the victims could identify their attacker and the only evidence tying the defendant to the crime was DNA evidence.
 

 Additionally, and in compliance with
 
 Prieur,
 
 the jury instructions provided that the other crimes evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge
 
 *1140
 
 other than the one named in the indictment or one that is responsive to that charge.
 

 The trial court properly found this other crimes evidence admissible under La. C.E. art. 404(B). Thus, this assignment is without merit.
 

 Motion to Sever the Offenses
 

 In his fourth assignment of error, the defendant alleges that the trial court erred in denying his motion to sever the offenses for trial. He specifically argues that the three counts ought to have been severed in order to avoid jury confusion in regards to the DNA evidence, that the joinder of the offenses prejudiced him by giving the appearance that he is a serial rapist, and that such an inference would make the jury hostile prior to the production of any evidence.
 

 La. C. Cr. P. art. 493 provides the following:
 

 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
 

 1La. C. Cr. P. art. 495.1 provides:
 

 If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
 

 The defendant moved to sever the offenses alleging prejudice. The trial court denied the motion finding that the counts involved the same type of offense, shared a commonality, and would involve the presentation of the same type of testimony and evidence. The court held that any prejudice that might exist can be overcome by jury instructions.
 

 In
 
 State v. Harris,
 
 33,406 (La.App.2d Cir.8/25/00), 765 So.2d 1230,
 
 writ denied,
 
 00-2868 (La.8/24/01), 795 So.2d 322, this court noted the Louisiana Supreme Court’s prior holdings regarding a defendant’s motion to sever:
 

 Such a motion is addressed to the sound discretion of the trial court and the court’s ruling should not be disturbed on appeal absent a showing of abuse of discretion.
 
 State v. Williams,
 
 418 So.2d 562 (La.1982). According to
 
 State v. Washington,
 
 386 So.2d 1368 (La.1980), considerations for the trial court in determining whether prejudice may result from joinder include: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
 
 State v. Celestine,
 
 452 So.2d 676, 680 (La.1984);
 
 see also, State v. Mims,
 
 478 So.2d 685 (La.App. 2d Cir.1985).
 

 This court has upheld the joinder for trial of separate charges for the rape of separate victims.
 
 State v. Washington,
 
 36,224 (La.App.2d Cir.9/18/02), 828 So.2d 97,
 
 writ denied,
 
 02-2963 (La.9/19/03), 853 So.2d 631, citing,
 
 State v. Harris, supra.
 
 This court explained the rationale behind allowing the joinder in
 
 Harris:
 

 
 *1141
 
 “The evidence demonstrated the similarity of the common scheme of the crimes and at trial, the evidence was presented chronologically and evidence as to each crime was presented separately.”
 
 State v. Washington, supra.
 

 The nature of the offenses at issue in this case demonstrates that they are of a similar character and are clearly triable by the same mode of trial. All three counts are for aggravated rape. Under La. C. Cr. P. arts. 493 and 493.2, these charges may be joined in the same indictment or information if they are found to be of the same or similar character or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. In such a case, the charges are all triable by a jury of 12 jurors, 10 of whom must concur to render a verdict.
 
 State v. Washington, supra.
 

 The record establishes that two of the offenses occurred within a two-mile radius and all occurred within ten miles or less of the defendant’s residence. The record does not reflect that the evidence was confused in any way. The evidence was presented chronologically by victim. Moreover, the jury was clearly instructed to consider each count separately. The defendant was not confounded in presenting his defense. Most importantly, the offenses were of such a similar nature that joinder was clearly justifiable. All of the victims were elderly females, lived within ten miles of the defendant, and were attacked in their bedrooms in the early morning hours by a silent intruder.
 

 12sThe counts were properly triable in one trial. The trial court did not abuse its discretion in denying the motion to sever. Thus, this assignment is without merit.
 

 Testimonial Hearsay
 

 In his fifth assignment of error, the defendant urges that the trial court erred in allowing testimonial hearsay to be admitted. More specifically, he argues that the use of prior statements made by the victims who were deceased at the time of trial were inadmissible hearsay, and thus, were improperly admitted. The defendant further asserts that the admission of the testimonial hearsay violates the defendant’s right to confrontation. La. C.E. art. 802 provides that hearsay is not admissible unless allowed by legislation.
 

 La. C.E. art. 801(C) defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 803 provides that regardless of the availability of the declarant, the following are not excluded by the hearsay rule:
 

 (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
 

 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 

 (3) Then existing mental, emotional, or physical condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant’s then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it prelates to the execution, revocation, identification, or terms of declarant’s testament.
 

 
 *1142
 
 (4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
 

 The Sixth Amendment’s Confrontation Clause provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.”
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The U.S. Supreme Court had held that this procedural guarantee is applicable to both federal and state prosecutions.
 
 Pointer v. Texas,
 
 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
 

 The Court, in
 
 Crawford v. Washington,
 
 abrogated
 
 Ohio v. Roberts,
 
 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, and held that:
 

 Out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by the court.
 

 “Confrontation rights claims are subject to harmless error analysis.”
 
 State v. Ealy,
 
 44,252 (La.App.2d Cir.5/13/09), 12 So.3d 1052;
 
 Delaware v. Van Arsdall,
 
 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986);
 
 State v. Robinson,
 
 01-0273 (La.5/17/02), 817 So.2d 1131. “Mistaken application of the rule of
 
 Crawford v. Washington
 
 is also subject to harmless error analysis.”
 
 State v. Buckenberger,
 
 07-1422 (La.App. 1st Cir.2/8/08), 984 So.2d 751,
 
 writ denied,
 
 08-0877 (La.11/21/08), 996 So.2d 1104.
 

 At the time of trial, R.H. and A.A. were deceased and thus unavailable to testify. In order to present its case, the state was allowed to present limited statements made by these two victims to law enforcement, friends or medical personnel immediately following the attacks. The only statements made by the victims that were admitted were to the effect that they had been raped and/or that they needed to go to the hospital.
 

 The defendant filed a motion to quash the bill of indictment. In his motion, he argued that the statements regarding the alleged rape of R.H. and A.A. violated the confrontation clause under
 
 Crawford v. Washington, supra.
 
 The defendant posited that the state would be prohibited from introducing any of the hearsay statements and thus would be unable to prove that the alleged rapes occurred. Accordingly, the defendant moved to quash the indictment.
 

 The trial court denied the motion and entered written reasons for judgment. The court correctly determined the critical issue to be what constitutes a “testimonial statement.” Courts have listed the following as examples of testimonial statements: affidavits, custodial examinations, depositions, prior testimony, confessions, or similar pretrial statements that declarants would reasonably expect to be used in a prosecution. See
 
 Crawford v. Washington, supra;
 
 and
 
 State v. Leonard,
 
 05-42 (La.App. 5th Cir.7/26/05), 910 So.2d 977. The cases provide that statements made withl^no reasonable belief that they would later be used in a trial are not considered “testimonial” in nature.
 

 Under the
 
 Crawford
 
 analysis, the statements made by the victims which were admitted at trial did not constitute “testimony.” The statement made by R.H. to
 
 *1143
 
 Alice Carson was a call for help following an attack, not a statement that R.H. believed would be used in trial. Additionally, the statements made by R.H. and A.A. to medical personnel were for medical treatment and not made with the belief that they would later be used at a trial. These vulnerable, elderly women were seeking immediate aid following a violent sexual attack. Their statements seeking said help were not made with any intent to be used in any future, possible trial.
 

 Crawford v. Washington
 
 bars testimonial hearsay statements. First report statements and statements made for diagnosis and medical treatment do not violate
 
 Crawford v. Washington
 
 if they are nontestimonial. The defendant complains that the following statements constituted hearsay and were improperly admitted at trial: statements made by A.A. and R.H. to medical personnel at Franklin Medical Center and statements made by R.H. to Alice Carson.
 

 Regarding the statements made by A.A. and R.H. to medical personnel at Franklin Medical Center, the treating nurses and physicians were allowed to testify regarding them initial examinations of A.A. and R.H. and as to the physical findings from the sexual assault examination. Dr. Tapia testified that R.H. reported to the hospital because she had been sexually assaulted. 127Such a statement is an exception to the hearsay rule because it was made for the purpose of medical treatment and diagnosis.
 

 None of the witnesses, which included medical personnel and responding police officers, provided testimony that the victims stated that they had been raped. Instead, the testimony was limited to what they observed, the physical examination process, and the results of the exam. However, the defendant argues that the rape kit would not have been performed had the victims not complained of being raped. Therefore, he argues that, presumably the jury would infer that A.A. and R.H. did claim that they were raped. This argument is too attenuated, and thus mer-itless.
 

 Regardless of whether such an argument has merit, which it does not, such a statement made by a rape victim to her treating nurses and physicians is a statement made for the purpose of medical treatment and diagnosis and thus properly admitted under the medical treatment and diagnosis exception of La. C.E. art. 803(3). Additionally, the statements were nontesti-monial and thus did not violate
 
 Crawford.
 

 Regarding the statements made by R.H. to Alice Carson, the defendant complains that Ms. Carson was improperly allowed to testify regarding the statements R.H. made to her following the attack. The statements that the defendant is specifically complaining of are those where Ms. Carson testified that R.H. called her shortly after the attack and asked for help because she had been raped. The statement made to Ms. Carson was properly admitted under La. C.E. art. 803(2). The statement falls within the hearsay exception as an excited utterance, “a statement relating to a startling event ... made |2Rwhile the declarant was under the stress of excitement caused by the event or condition.” Additionally, the statement was non-testimonial and thus did not violate
 
 Crawford.
 

 The defendant also objects to Ms. Carson’s testimony regarding the statements R.H. made in her presence after Ms. Carson arrived at R.H.’s home. In this conversation, R.H. described the attack, but was unable to identify her rapist. R.H. was merely explaining the traumatic event to her close friend, clearly nontestimonial statements. R.H. stated that following the
 
 *1144
 
 attack she remained on the floor of her bedroom out of fear that her attacker remained in her house. Once she was certain he had left, she telephoned her friend who arrived within 10 to 15 minutes of the frantic call. The statements made by R.H. to Ms. Carson fell within the excited utterance and present sense impression exceptions to the hearsay rule.
 

 The objected to statements were nontes-timonial and fell within the exceptions to the hearsay rule. However, even if the statements constituted testimonial hearsay, which they do not, confrontation rights claims and mistaken application of the
 
 Crawford
 
 rule are subject to harmless error analysis.
 
 State v. Ealy, supra,
 
 and
 
 State v. Buckenberger, supra.
 
 There existed substantial evidence to convict the defendant on all three counts. The guilty verdict actually rendered is unattributable to the alleged error.
 
 State v. Casey, supra.
 

 This assignment is therefore without merit.
 

 Iz^Excessive Sentence
 

 In his sixth and final assignment of error, the defendant argues that the sentences imposed are excessive for this offender and offenses. Specifically, he argues that the sentences imposed are grossly disproportionate to the crimes allegedly committed by the defendant and represent nothing more than the needless imposition of pain and suffering. The defendant asserts that although the sentence are within the range authorized by statute, they are nevertheless unconstitutionally excessive.
 

 La. R.S. 14:42(D)(1), Louisiana’s aggravated rape statute’s penalty provision, provides in pertinent part:
 

 Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
 

 The Louisiana Supreme Court, in
 
 State v. Smith,
 
 433 So.2d 688, 698 (La.1983), provided:
 

 While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, [but] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant.
 
 State v. Ray,
 
 423 So.2d 1116 (La.1982);
 
 State v. Keeney,
 
 422 So.2d 1144 (La.1982);
 
 State v. Duncan,
 
 420 So.2d 1105 (La.1982). A sentence will be deemed excessive where it is grossly out of proportion to the severity of the crime or where it is “nothing more than the purposeless and needless imposition of pain and suffering.”
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980).
 

 The trial court discussed the contents of the PSI. The only statement provided by the defendant was that he did not commit the rapes. The victims or their representatives were contacted and all indicated they felt the defendant should receive the maximum sentence or a life sentence.
 

 lanThe three counts of aggravated rape arose out of separate facts and represented three distinct convictions. Had the offenses been tried separately, the defendant would have received the mandated sentence of life imprisonment in each case and could have been ordered to serve them consecutively. That the offenses were tried in one trial is of no matter.
 

 Moreover, the trial court considered the aggravating factors and included them in his judgment. The court provided that the defendant’s criminal history contained several lesser charges, including a traffic violation and trespass, etc., and three prior violent offenses. On one occasion, the defendant pled guilty to aggravated battery after he shot Willie Jean Brown. He was
 
 *1145
 
 sentenced to one year and was released in 1982.
 

 In January 1984, the defendant was arrested for first degree murder, aggravated arson and simple arson. The fire occurred at the residence of Willie Jean Brown, the victim of the previous aggravated battery. As a result, the defendant was arrested and charged with simple arson. The defendant made a voluntary statement that several years before, on April 27, 1979, he started a fire which resulted in the death of Charlotte Richardson. He was charged with attempted first degree murder. The defendant pled guilty to the charges and received 15 years.
 

 The defendant’s history of violent offenses is sufficient to support the imposition of consecutive sentences. The court provided that the other aggravating factor was the deliberate cruelty to the victims due to their age and vulnerability. There are no mitigating factors. The court noted that a lesser sentence would deprecate the seriousness of the crime. It cannot be | a, said that the trial court abused its discretion in imposing consecutive sentences.
 

 This assignment is therefore without merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the defendant’s convictions and sentences.
 

 AFFIRMED.
 

 [1]
 

 . The physician who examined and treated A.A. Dr. Woodard, passed away prior to trial in an unrelated plane crash.
 

 [2]
 

 . Serology analysis progressed into DNA analysis. Serology is based on blood types whereas DNA analysis specifically focuses on genetic material contained in cells.
 

 [3]
 

 . The CODIS DNA section is one of two sections in the DNA Unit of the Louisiana State Police Crime Laboratory. The Combined DNA Index System (CODIS) blends computer and DNA technologies and uses two indexes to generate investigative leads in crimes where biological evidence is recovered from a crime scene. The Convicted Offender index
 
 *1134
 
 contains DNA profiles of individuals convicted of felony sex offenses (and other violent crimes). The Forensic index contains DNA profiles developed from crime scene evidence. CODIS utilizes computer software to aulo-maticaily search these indexes for matching DNA profiles. Louisiana State Police Website,
 
 available at
 
 http://www.lsp.org/crimelab. html (2/24/2010).