**STATE OF LOUISIANA**      *      **NO. 2021-K-0585**

**VERSUS**      *

     **COURT OF APPEAL**

**TROY JORDAN**      *

     **FOURTH CIRCUIT**

     *

     **STATE OF LOUISIANA**

     *** * * * * * ***

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 21-01840, DIVISION "A"
Honorable William M McGoey, Judge
**\* \* \* \* \* \***
**Judge Regina Bartholomew-Woods**
**\* \* \* \* \* \***

(Court composed of Judge Regina Bartholomew-Woods, Judge Tiffany Gautier
Chase, Judge Dale N. Atkins)

**CHASE, J., CONCURS IN THE RESULT**


Michael Ginart
John Ginart
Joyce Young
Nicholas N.S. Cusimano
Law Office of Michael C. Ginart, Jr. & Associates
2114 Paris Road
Chalmette, LA 70043

     COUNSEL FOR RELATOR/DEFENDANT

Perry Michael Nicosia
DISTRICT ATTORNEY
Alexis Berges
Ashton J. Liccardi
Assistant District Attorneys
DISTRICT ATTORNEY'S OFFICE
ST. BERNARD PARISH
1101 West St. Bernard Highway
Chalmette, Louisiana 70043

     COUNSEL FOR RESPONDENT/STATE OF LOUISIANA

            **WRIT DENIED**
            **DECEMBER 21, 2021**

*RBW*

*DNA*

Relator Troy Jordan ("Mr. Jordan") seeks review of the trial court's ruling, which found him guilty of battery of a dating partner and resisting an officer. In that Mr. Jordan was convicted of two misdemeanor offenses, Mr. Jordan is not entitled to appellate review; notwithstanding the aforementioned, pursuant to La. C.Cr.P. art. 912.1(C), Mr. Jordan is entitled to review of his misdemeanor convictions by application for supervisory review only. For the reasons that follow, we deny Mr. Jordan's application for supervisory review.

### *PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

On May 24, 2021, Mr. Jordan was charged by bill of information with one count of battery of a dating partner, a violation of La. R.S. 14:34.9, and one count of resisting an officer, a violation of La. R.S. 14:108. On June 15, 2021, Mr. Jordan appeared for arraignment and entered pleas of not guilty. On August 19, 2021, a bench trial was held, and Mr. Jordan was found guilty on both counts. The following facts were adduced at trial.

On May 14, 2021, the victim, W.F.,[1] called 911 to report an incident of domestic violence. She gave the 911 operator her assailant's name as Troy Jordan and stated that he was her "baby's daddy," and they were still together. At the time the victim initiated the call, the victim stated that Mr. Jordan was still present on the scene. The victim stated that she was pregnant and Mr. Jordan fought her. She stated he pushed her to the ground, and she had a "hickey" on her head and arm. She asked for the police to be sent. The victim provided Mr. Jordan's vehicle license number and stated that he was leaving. The victim stated Mr. Jordan was headed towards New Orleans and provided a description of his clothing. The victim also indicated that Mr. Jordan was in possession of a gun.

Deputy Paul Mitchell ("Deputy Mitchell") testified that in May 2021 he had been employed by the St. Bernard Parish Sheriff's Office for three (3) years as a deputy patrol officer. On May 14, 2021, Deputy Mitchell was called to the scene of a domestic disturbance. Deputy Mitchell arrived on the scene approximately seven (7) to eight (8) minutes after receiving the dispatch. When Deputy Mitchell came into contact with the victim, Mr. Jordan was not present. Deputy Mitchell was wearing a body camera when he arrived at the victim's residence and recorded the statement the victim gave him. Deputy Mitchell testified, without objection by Mr. Jordan, that when he first encountered the victim, she said that she and Mr. Jordan were in a verbal altercation, which escalated to him forcefully shoving her to the ground. At some point during the altercation, as he was leaving, Mr. Jordan punched her in the forehead with a closed fist and left the residence. Deputy Mitchell observed a small knot protruding on the front of the victim's forehead. At trial, Deputy Mitchell identified a photograph he took of the victim which depicted

_____

[1] To protect the victim's identity, we use the victim's initials in this opinion.

2

a superficial injury to the inside of the victim's right arm. The photographs showing the victim's injuries were admitted into evidence.

Deputy Mitchell confirmed that the entirety of his interaction with the victim was recorded on his body-worn camera. Deputy Mitchell's body camera footage was offered into evidence.[2] Deputy Mitchell stated that based on the victim's statement that Mr. Jordan struck her before he fled, he prepared a warrant for Mr. Jordan's arrest. Under cross examination, Deputy Mitchell affirmed that the victim said she "went at" Mr. Jordan because he had done something "sneaky."

Following the testimony of Deputy Mitchell, the State asserted that the 911 call made by the victim was admissible under the business records exception and the excited utterance exceptions to the hearsay rule. Defense counsel stipulated to the admissibility of the 911 call made on May 14, 2021.

Deputy Jules Martin[3] ("Deputy Martin") was the next witness to testify. Deputy Martin stated that in May 2021 he had been employed by the St. Bernard Sheriff's Office for four (4) years. On May 17, 2021, he was dispatched to 208 West Genie Street. This call related back to the domestic disturbance call that occurred a few days earlier, on May 14, 2021. Mr. Jordan and the victim were both at 208 West Genie Street when Deputy Martin arrived. Deputy Martin ran a criminal history on Mr. Jordan and determined there was an active warrant for his arrest. When Deputy Martin first attempted to place Mr. Jordan under arrest,

---

[2] Deputy Mitchell's body camera footage depicts exactly what he testified to. The victim tells Deputy Mitchell that she was pregnant and that she and her boyfriend had an altercation. She further tells Deputy Mitchell, while pointing to her injuries, that he fought her and hit her in the head. Also, during the footage, the victim can be heard telling someone on the phone the following: "I hate to do it to him (Mr. Jordan), but I had to call the police. I'm tired of it. He done [sic] put his hands on me again. I can't do it with him no [sic] more." She also told the caller that Mr. Jordan pushed her to the ground and punched her in the head.
[3] The writ application reveals two different spellings of the deputy's name, Jules and Jewels. We have used the spelling that appears in the trial court minutes.

Deputy Martin advised him that there was a warrant for his arrest. When Deputy Martin proceeded to make the arrest, Mr. Jordan resisted. Mr. Jordan would not surrender his hands to be handcuffed. A brief struggle ensued. Eventually, Mr. Jordan was handcuffed and placed under arrest. Deputy Martin stated that the struggle and arrest were recorded on his body-worn camera.[4]

At trial, Deputy Martin recalled speaking with the victim on May 17, 2021. When Deputy Martin asked the victim about the events of May 14, 2021, the victim denied that Mr. Jordan touched her. The victim stated that nothing happened. The May 17, 2021 footage, captured on Deputy Martin's body-worn camera, was played for the trial court. Defense counsel restated the objection to the videos because the victim was not available to testify; however, the trial court found the videos admissible. Per the stipulation, the 911 call placed on May 17, 2021, was played for the trial court.

Keena Vancourt ("Ms. Vancourt"), the victims' coordinator with the St. Bernard Parish District Attorney's Office, was the next witness to testify. Ms. Vancourt stated that she had contact with the victim in this case. Ms. Vancourt testified that the victim appeared at Ms. Vancourt's office a few times to ask that the charges be dropped. Ms. Vancourt explained to the victim that the district attorney's office had a no-drop policy and advised her that when the case proceeds to trial, she would be needed to testify. Ms. Vancourt stated that at the previous trial setting, the victim did, in fact, appear to testify. The victim had been served to appear at the trial on August 19, 2021, but did not appear. Ms. Vancourt had made several unsuccessful attempts to talk to the victim since the July trial court date.

---

[4] Deputy Martin's body camera footage depicts the struggle between Mr. Jordan and Deputy Martin, as well as Mr. Jordan trying to escape arrest by running back towards the house.

Ms. Vancourt indicated that she sent the victim a letter reminding her of the trial court date, she also called her, and she left her voice messages as well as text messages.  A week before trial, the victim appeared at Ms. Vancourt's office and again asked if she could drop the charges.  The victim was advised, again, of the no-drop policy and was asked to appear in the trial court the following week.  Ms. Vancourt attempted to reach the victim the day before trial, as well as the day of trial; however, the victim failed to appear.

At trial, defense counsel submitted the *Brady*[5] domestic violence statement which reads:

> NOW INTO COURT through the undersigned counsel (Assistant District Attorney) comes the State of Louisiana, which provides through this pleading The Following:
> 1.
> Troy Jordan
> - Defendant didn't hit her
> - Disagreement that was verbal -> accusing him of doing something
> - Defendant trying to leave
> - Victim stood in front of door
> - Victim opened door and when it flew open it hit her on the head (forehead)
> - Defendant never opened the door
> - Victim told police that he hit her with his fists out of anger, [s]he said wrong story because she was angry with him

Following argument from both sides, the trial court found Mr. Jordan guilty of the two (2) following misdemeanors: battery of a dating partner and resisting arrest.  Thereafter, Mr. Jordan was sentenced to thirty (30) days in jail for the battery of a dating partner offense.  In addition, a fine of $300 was imposed, along with court costs and his mandatory participation in a twenty-six (26)-week, court-monitored domestic abuse intervention program.  Further, upon his release from

---

[5] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

incarceration, Mr. Jordan would be required to serve nine (9) months of probation. As to the resisting an officer charge, Mr. Jordan was sentenced to ten (10) days incarceration, which sentence was to run concurrently with the sentence imposed for battery of a dating partner conviction. No costs were assessed. Mr. Jordan now seeks this Court's supervisory review of his convictions and sentences.

## DISCUSSION

Mr. Jordan raises three (3) assignments of error: (1) whether the trial court erred by allowing the body-camera footage of the victim's encounter with the deputies to be admitted into evidence; (2) whether the trial court erred by admitting the 911 calls into evidence; and (3) whether there was sufficient evidence submitted at trial to convict relator of resisting an officer.[6]

### *Admissibility of Body-Camera Footage*

Mr. Jordan argues on supervisory review that the trial court erred by finding the body camera footage of the victim's encounter with the deputies admissible into evidence. At trial, Mr. Jordan objected to the introduction of the body camera footage on the basis of hearsay as the State intended to introduce the video for the purpose of establishing what the victim said. The trial court ruled that it needed to see the body camera footage first before it could determine whether an exception to the hearsay rule would permit its admittance into evidence.

Defense counsel argued that there were no exigent circumstances because it had been over seven (7) minutes since the dispatch call went out and that Mr. Jordan was not present on the scene. The State argued the evidence was admissible under the present sense impression exception to the hearsay rule; and

---

[6] When a defendant has been convicted of a misdemeanor offense, like in the instant case, the Court does not conduct an errors patent review under its supervisory jurisdiction. *See State v. Morales,* 13-1148, p. 2, n. 2 (La. App. 4 Cir. 1/22/14), 133 So.3d 144, 145, n. 2.

therefore, the victim did not need to be available to testify. The trial court found that the fact that the video was made approximately nine (9) minutes after the event, enabled the video to be admitted under the exception of present sense impression. The trial court found nine (9) minutes after the event occurred was "immediately thereafter" and admitted the video. The body camera video was played for the judge. Following the video, defense counsel maintained that "clearly" the video did not depict an excited situation. The trial judge reasoned that since it was admitted under the present sense impression exception to the rules prohibiting the admission of hearsay, the victim did not need to be excited.

Louisiana Code of Evidence article 803 sets forth the exceptions to the hearsay rule. La. C.E. art. 803(1) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

"A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion." *State v. Wright*, 11-0141, p. 10-11 (La. 12/6/11), 79 So.3d 309, 316; *State v. Cosey*, 97-2020, p. 13 (La. 11/28/00), 779 So.2d 675, 684.

In *State v. Ditcharo*, 98-1374, p. 10 (La. App. 5 Cir. 7/27/99), 739 So.2d 957, 963, the Fifth Circuit Court of Appeal found that a statement made five (5) minutes after an incident occurred fell within the exception of present sense impression. Additionally, in *State v. Morgan*, 45,110 (La. App. 2 Cir. 4/14/10), 34 So.3d 1127, the defendant was charged with rape of an 89-year-old woman. The defendant objected to testimony regarding the statement the victim made to a friend after the friend arrived at the victim's home. *Id.*, 45,110, p. 28, 34 So.3d at

7

1143-44. In her conversation with her friend, the victim described the traumatic event. The victim's friend arrived within ten (10) to fifteen (15) minutes from the time she received the victim's frantic call. The Second Circuit found the statements made fell within the excited utterance and present sense impression exceptions to the hearsay rule.

In the matter *sub judice*, the victim's initial statement to Deputy Mitchell was made seven (7) to eight (8) minutes after the alleged abuse took place. The video reflects that the victim was sitting in her vehicle talking to another individual on the phone as she was interviewed by Deputy Mitchell. Therefore, we find no abuse of the trial court's discretion in allowing the video footage from Deputy Mitchell's body camera into evidence under the exception of present sense impression since her statements were made soon after the event occurred.

### The 911 Calls

Mr. Jordan argues next that the trial court erred by admitting the 911 calls into evidence. While he argues that admitting the 911 calls into evidence was error, this Court notes that Mr. Jordan stipulated that the 911 calls were admissible into evidence under the business records and excited utterance exceptions to the hearsay rule.[7] However, even without Mr. Jordan's stipulation, the 911 calls would have still been admissible.

In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the U.S. Supreme Court explained:

> Statements are nontestimonial when made in the course
> of police interrogation under circumstances objectively

---

[7] *See State v. Simmons*, 00-35, p. 4 (La. App. 5 Cir. 7/25/00), 767 So.2d 860, 861-62 (finding defendant acquiesced to the admission of a police report based on defendant's stipulation) ("A stipulation has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact").

8

> indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.*, 547 U.S. at 822, 126 S.Ct. at 2273-74. "A 911 call, …at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.*, 547 U.S. at 827, 126 S.Ct. at 2276. The *Davis* Court reasoned that in that case the victim was "speaking about events as they were actually happening, rather than 'describ[ing] past events'" and that, "[a]lthough one *might* call 911 to provide a narrative report of a crime absent any imminent danger, [the victim's] call was plainly a call for help against bona fide physical threat." *Id.* (emphasis in the original). Further, the purpose of the questions posed by the 911 operator was to "*resolve* the present emergency, rather than simply learn…what [] happened in the past." *Id.* (emphasis in the original). Finally, the victim's answers were "frantic" and "provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *Id.*

In the present case, the victim was clearly upset during the 911 call on May 14, 2021. When the victim initiated the call and was speaking to the 911 operator, Mr. Jordan was still present on the scene. The victim related the ongoing domestic violence situation. Since her statements to the 911 operator were an attempt to seek aid in an ongoing emergency, requiring police assistance, they were not testimonial and therefore admissible as excited utterances.

*Resisting an Officer*

In his third assigned error, Mr. Jordan avers there is insufficient evidence to support his conviction for resisting an officer. At trial, Deputy Martin testified that he when came into contact with Mr. Jordan, he advised Mr. Jordan that there was a warrant for his arrest. As Deputy Martin attempted to handcuff him, Mr. Jordan struggled and would not allow his hands to be placed in handcuffs. Louisiana Revised Statute 14:108(A) provides in relevant part:

> Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

In reviewing whether the evidence presented in a case is sufficient to support a conviction, the appellate court is governed by the standard set forth in the United States Supreme Court decision of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. *Id.*, 443 U.S. at 319, 99 S.Ct. at 2789. A sufficiency of evidence review does not require a court to "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *State v. Mussall*, 523 So.2d 1305, 1309 (La. 1988) (quoting *Jackson*, 443 U.S. at 334, 99 S.Ct. at 2797 (Stevens, J. concurring)) (emphasis in original). "The inquiry requires the reviewing court to ask whether… the trier of fact interpreting all of the evidence in this manner could have found the

essential elements of the crime beyond a reasonable doubt." *Id*., 523 So.2d at 1309-10 (citing *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789).

The "'reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.'" *State v. Carter*, 18-0072, p. 14-15 (La. App. 4 Cir. 10/10/18), 257 So.3d 776, 787 (quoting *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992)). A reviewing court is neither "permitted to second guess the rational credibility determinations of the fact finder at trial, nor is [it] required to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict." *State v. Kelly*, 15-0484, p. 3 (La. 6/29/16), 195 So.3d 449, 451. "It is not the function of an appellate court to assess credibility or reweigh the evidence." *Id*., 15-0484, p. 3-4, 195 So.3d at 451 (citing *State v. Stowe*, 635 So.2d 168, 171 (La. 1994)).

As the body camera footage depicts, Deputy Martin advised Mr. Jordan that there was a warrant for his arrest and that he was under arrest. Thus, Mr. Jordan was subject to lawful arrest. Upon hearing that he was under arrest, Mr. Jordan wrestled away from the deputy, began running back towards the house and refused to allow himself to be handcuffed. Because Mr. Jordan would not allow Deputy Martin to handcuff him and a struggle ensued, he was guilty of resisting arrest. Therefore, the trial court did not err in finding sufficient evidence to sustain the conviction.

## CONCLUSION

Based on the foregoing reasons, we find the trial court did not err in allowing the body camera footage into evidence under the present sense impression exception to the hearsay rule. Likewise, we find no error in the trial court's admitting the 911 calls into evidence considering Mr. Jordan stipulated to their

admissibility.  Even still, the victim was attempting to seek aid in an ongoing emergency, requiring police assistance.  Thus, the statements were admissible as excited utterances.  Finally, the testimony of Deputy Martin as well as the body-camera footage established sufficient evidence for the trial court to find Mr. Jordan guilty of resisting a police officer beyond a reasonable doubt.

## *DECREE*

Based on all the aforementioned, we deny Mr. Jordan's application for supervisory review.

### WRIT DENIED